LOLUNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| MANUEL YBARRA | : | DOCKET NO. 06-1367 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## BACKGROUND

Plaintiff to this action, Manuel Ybarra, Jr., initially filed an application for Disability Insurance Benefits under Title II of the Social Security Act on August 4, 2003. Transcript at 15. Plaintiff alleged disability beginning August 1, 1984, when his reported earnings first ceased. *Id.* at 16. Plaintiff remained insured under Title II only through March 31, 1990. *Id.* at 15. Accordingly, he needed to establish disability on or before that date in order to be entitled to disability insurance benefits. *Id.* at 15, 87. Plaintiff's initial application for benefits was denied and plaintiff requested a hearing before an administrative law judge (ALJ). *Id.* at 29, 34. On August 26, 2004, a hearing was held. *Id.* at 320-57. At the hearing, plaintiff, represented by counsel, testified, along with his wife and a vocational expert. *Id.*

The ALJ issued a written decision on September 24, 2004 finding plaintiff not disabled within the meaning of the Social Security Act on or before March 31, 1990. *Id.* at 15-25. On

June 23, 2006, the Appeals Council denied plaintiff's request for review of the decision. *Id.* at 4-6. Pursuant to 42 U.S.C. § 405(g), plaintiff requested that this court review the decision of the ALJ to determine if it is supported by substantial evidence. For reasons set forth below, this court finds that the ALJ's finding is supported by substantial evidence.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are

conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## **DISCUSSION**

The burden of proving that he or she suffers from a disability[1] rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to

---

[1] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Id.* at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act on or before March 31, 1990. The ALJ made this conclusion at step five of the sequential analysis. Specifically, the ALJ found that plaintiff had a RFC making him capable of performing a "significant range of light work as defined in 20 C.F.R. 404.1567"[2] with limited exposure to loud noise and a sit/stand option. Transcript at 22. The ALJ further determined that based on the testimony of a vocational expert, plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy on or before March 31, 1990, including positions as a cashier/clerk, a guard/watchman, or a sales clerk. *Id.* at 23. In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective

---

[2] 20 C.F.R. § 404.1567(b) defines light work:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

4

evidence of pain and disability; and (4) the claimant's age, education, and work history. *Perez*, 415 F.3d at 461.

Through this proceeding plaintiff challenges six aspects of the ALJ's determination that he was not disabled, claiming in each instance that the determination is not supported by substantial evidence:

> 1. The decision of the [ALJ] claiming that the findings did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation 4 on or before March 31, 1990 is not true as all of Petitioner's alleged disabilities are supported by substantial medical evidence.
>
> 2. The statement that the [ALJ] found the plaintiff's allegations regarding his limitations on or before March 31, 1990, were not totally credible for the reasons set forth in his decision appear to have been concluded without considering each of the medical limitations of the plaintiff[']s disabilities and without considering the professional determination made by the State[']s Vocational Expert, Dr. Hearn.
>
> 3. Under the correct standard there was not substantial evidence to support the defendant's decision, any reasonable finder of fact would have found the Petitioner completely disabled or would have requested further diagnostic studies in light of the supporting medical evidence. It is in the Petitioner's opinion that the[ALJ] primarily focused on impairments which had not surfaced until after March 31, 1990.
>
> 4. In light of the diagnosis of the treating physician who indicates in the records that all of the problems the plaintiff currently is experiencing and has experienced in the past are connected to his Diabetes mellitus which was first diagnosed in the early 1980[]s, no reasonable person could find the claimant ineligible of receiving full and total permanent disability.
>
> 5. The determination made by the [ALJ] where he states that the plaintiff was able to perform light work with hearing and exertion limitations on or before March 31, 1990 was contrary to the [ALJ], [w]itness and the [s]tate['] s own expert during the hearing.
>
> 6. The "medical records" in their totality do reflect in favor of "validating" the plaintiff's testimony. The testimony of the

> Petitioner was reasonable and expected in light of the medical evidence which clearly supported a finding of disability.

Doc. 8, at 4-5.

## I.

The substance of plaintiff's first and third arguments goes to the weight of the medical evidence before the ALJ. Plaintiff argues that medical evidence from various military facilities supported a conclusive determination of disability at step three of the five-step sequential evaluation. *Id.* at 5-7. Plaintiff also argues that the ALJ primarily focused on impairments which had not surfaced until after the relevant period. *Id.* Plaintiff asserts that the ALJ should have requested further studies in light of the evidence presented to him. *Id.*

Specifically, plaintiff alleges that his condition "met or equaled the criteria for any condition listed in Appendix 1" on or before March 31, 1990. *Id.* at 7. Plaintiff contends that the evidence presented to the ALJ "satisfied the threshold requirement of diagnosis of diabetes mellitus with neuropathy and the remaining criteria" with regard to his lower extremities and his dexterous movements. Doc. 10, at 2-3. Plaintiff alleges that the ALJ found he suffered from syncope on or before March 31, 1990 and stresses that "[s]yncope has no treatment, it comes all of a sudden and you black out." *Id.* at 3. Plaintiff further contends that substantial evidence supported a finding that he suffered from hearing loss and hypertension on or before March 31, 1990. Doc. 8, at 5.

This court finds that substantial evidence supports the ALJ's decision that plaintiff failed to meet his burden of proving presumptive disability on or before March 31, 1990 through step four of the sequential evaluation process. This court finds that that ALJ properly determined plaintiff's condition, based on the evidence from the relevant period, did not meet or exceed the criteria for a condition listed at 20 C.F.R. § 404, Subpart P, Appendix 1.

As to plaintiff's asserted conditions, the ALJ noted in his opinion at step two of the sequential analysis that "the medical evidence does reflect that claimant did have evidence of diabetes with diabetic neuropathy, hypertension, some history for syncope episodes, and a hearing loss in the left ear, on or before March 31, 1990." Transcript at 18. According to the ALJ, "[t]hese conditions in combination have had more than a minimal adverse effect on the claimant's ability to perform basic work activities, on or before March 31, 1990, and, therefore, may be deemed to have constituted severe impairments for the purpose of these proceedings." *Id.* Thus, it is apparent that the ALJ focused on the proper medical conditions at issue on or before March 31, 1990 in making his determination.

The ALJ moved on to step three of the sequential analysis to decide if the impairments were disabling *per se* on or before March 31, 1990. As noted above, plaintiff asserts that the impairments were disabling *per se*; however, substantial evidence supports the ALJ's findings that they were not.

> When assessing a claim for disability benefits, "[i]n the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). If the claimant is not actually working and her impairments match or are equivalent to one of the listed impairments, she is presumed to be disabled and qualifies for benefits without further inquiry. *See id.* at 532; *see also* 20 C.F.R. § 416.920(d). When a claimant has multiple impairments, the Act requires the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); *see Zebley*, 493 U.S. at 536 n.16; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

*Blackstock v. Astrue*, 527 F. Supp. 2d 604, 615 (S.D. Tex. 2007); *see also* 20 C.F.R. § 416.923 (analysis of combined effect of disabilities). In determining whether the combined effects of multiple impairments are disabling *per se*, "[t]he medical findings of the combined impairments

are compared to the listed impairment most similar to the claimant's most severe impairment." *Blackstock*, 527 F.Supp.2d at 615 (citing *Zebley*, 493 U.S. at 531).

In the present case, the ALJ similarly noted, "An impairment or combination of impairments is disabling *per se* if it is attended by signs, symptoms or laboratory findings that are severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Transcript at 18-19. The ALJ noted that he analyzed plaintiff's claims against Sections 3.00 (Respiratory System), 4.00 (Cardiovascular System), and 9.00 (Endocrine System) of the Listing of Impairments, but that it was not apparent that plaintiff had a condition that satisfied one of the listings. *Id.* Further, the ALJ noted that plaintiff, represented by counsel, advanced no argument at the hearing that his conditions on or before March 31, 1990 met or equaled the criteria for any condition listed. *Id.* at 18.

As to plaintiff's argument that the ALJ should have ordered further diagnostic studies, this court notes that the burden of proving a disability through step four of the sequential analysis rests with the plaintiff. *Perez*, 415 F.3d at 461 (5th Cir. 2005). The ALJ's responsibility is limited to aiding the claimant in developing his or her complete medical history by, where necessary, arranging for consultative examinations and making reasonable efforts to help a claimant get medical reports from claimant's medical sources. 20 C.F.R. § 404.1545. In the instant case, plaintiff does not argue that less than all the medical sources provided medical reports or that his record was in any other way incomplete. Claimant had the burden of proving that he was disabled by showing a "medically determinable" impairment, demonstrated by "medically acceptable clinical and laboratory diagnostic techniques." *Greenspan*, 38 F.3d at 239. Substantial evidence supports that the ALJ made his determination while considering a

fully developed record. Based on that record, plaintiff failed to meet his burden of showing that he was disabled within the meaning of the Social Security Act.

Plaintiff further argues that his medical records establish the components of disability *per se* under Appendix 1. It appears from the record before this court that the ALJ reviewed plaintiff's medical records in concluding that plaintiff's condition did not meet or equal the criteria for any condition listed on or before March 31, 1990. The ALJ noted:

> The evidence of record contains the claimant's records from various military facilities. A medical report dated February 25, 1980 from Fort Polk Army base revealed the claimant was a diabetic. On examination, he complained of chest pain after drinking coffee. A hearing evaluation noted the claimant had a slight hearing loss in his left ear. . . . A report dated March 20, 1984 indicated the claimant complained of a syncope episode and he underwent an echocardiogram which was normal. The claimant was evaluated on January 13, 1987. He reported a moderate lifestyle. Examination of his lower extremities noted a sharp/dull sensation. He was diagnosed with type II diabetes, inadequately controlled.

Transcript at 19.

A comparison of the ALJ's findings to the appropriate listings of Appendix 1 supports the ALJ's findings. As to plaintiff's diabetes mellitus, the medical evidence supports that plaintiff had diabetes, as credited by the ALJ. According to Appendix 1, however, plaintiff must also establish that he suffers from "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.08(A). The medical evidence supports that plaintiff had related neuropathy, but it caused only sharp/dull sensations in plaintiff's lower extremities. Transcript at 19, 126-49. Plaintiff cites no evidence before this court that established that his neuropathy was more severe than credited by the ALJ.

As to plaintiff's syncope, during the relevant period, plaintiff had only one documented occurrence in his medical records and an echocardiogram given to plaintiff as a result was normal. According to plaintiff's own testimony, although he reported three other episodes of syncope over the nearly 20-year relevant period, he did not seek treatment or diagnostics for any of these. *Id.* at 19, 135. According to the requirements of Appendix 1, § 4.00, findings associated with syncope require that they are documented, uncontrolled, and recurrent despite treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.05. Plaintiff's alleged syncope is barely documented, and he has established neither that he sought treatment for the alleged disability, nor that it remained uncontrolled despite treatment.[3] It is plaintiff's burden to establish by medical evidence that his impairment met the requirements of Appendix 1. *Greenspan*, 38 F.3d at 239; *see* 20 CFR § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms."). Here substantial evidence supports the ALJ's determination that plaintiff failed to meet that burden.

## II.

Plaintiff's second, fourth, and sixth arguments go to the weight accorded all evidence presented by the plaintiff. In his second argument, plaintiff asserts that the ALJ improperly limited the credit to which he accorded plaintiff's testimony. Doc. 8, at 6. Plaintiff argues that at least two incidents during the relevant period, one where he cut off half of his index finger using a chainsaw and one where he fell off a ladder (both in 1987), are documented in the medical records and show the limitations plaintiff has experienced due to his disabilities. *Id.* In his fourth argument, plaintiff asserts that the ALJ ignored diagnoses of his treating physician and the

---

[3] Syncope is also addressed in § 104. Section 104.05 requires the same findings as § 4.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1

ratings of the Department of Veteran Affairs. *Id.* at 8. Finally, plaintiff's sixth argument makes the catch-all statement that the medical record validates plaintiff's testimony in favor of a finding of disability on or before March 31, 1990. *Id.* at 9.

It appears from the record that the ALJ properly considered the evidence presented by plaintiff. He notes in his opinion:

> In addition to the medical evidence, the [ALJ] has considered the claimant's testimony at the hearing and other statements regarding his symptoms, restrictions and activities. The claimant testified that he has a college education and twenty years of military service. Mr. Ybarra testified that he stopped working in August 1984 due to syncope. He testified that his wife owns several businesses in and around Leesville, LA, but he does not work at any of these establishments. The claimant further testified that three years of tax returns (1992 through 1994) were amended into his wife's name. The claimant reiterated that he performs or performed absolutely no work at any of these establishments, other than that he may occasionally write a check.
>
> Mr. Ybarra testified that he attempted to find employment subsequent to 1984. He indicated that he applied for work with the Central intelligence Agency (CIA) and the Secret Service. He also testified that he applied for work to be a state trooper and believed that as recently as 2000 that he would have been able to perform such work activity. He reported that he had been very favorably evaluated for the job. He indicated that the Department of Veterans Affairs told him in 2000 they would help him with getting a job as a state trooper. However, he testified further that once his history of apparent syncope episodes had been revealed, such employment had been ruled out.
>
> Mr. Ybarra testified that has had several syncope episodes. He reported that he had one syncope episode in each of the years 1968, 1974, 1984, 1987, 1996 and 2000. The claimant indicated that the cause of these episodes is unknown. He indicated that he was diagnosed with diabetes mellitus before 1990 and carpal tunnel syndrome in 1988. Mr. Ybarra indicated that he took insulin and hypertensive medication prior to March 1990. The claimant further reported visual problems before 1990. Mr. Ybarra indicated that he was injured while operating a chain saw in 1987 but recovered from these injuries. He also reported undergoing hernia repair in 1983.

> Mr. Ybarra testified that prior to 1990 he could drive a car for an extended period of time but would have to stop and rest. He testified that he could stand one hour, walk one mile and mow grass for a short period of time and then would have to rest. Such a range of activities is clearly consistent with the residual functional capacity detailed below. He apparently did not seek or require on-going evaluation or significant treatment for his alleged syncope condition, on or before March 31, 1990. This condition also apparently did not require medication and was only episodic in nature, allegedly occurring once every several years according to the claimant's testimony and treatment records. The claimant alleges disability as of the day after he retired with a regular "non-disability" military pension.
>
> Mrs. Marie Ybarra, claimant's wife, also appeared and testified. Mrs. Ybarra testified that she did not know the last time the claimant had a blackout spell but in the 1980s he alleged he had at least two a month. This frequency of such alleged spells is not supported by the record, the claimant's treatment history, or the claimant's own testimony. . . . She testified that no physician instructed her husband to limit his activities before 1990. Mrs. Ybarra testified that Mr. Ybarra helps with the book work in the business but does no physical activities. She further testified that prior to 1990 her husband could not type and did no yard work. Mrs. Ybarra indicated that her husband could walk one-fourth of a mile.

Transcript at 19-20.

After examining this evidence, the ALJ properly noted that a claimant's testimony "is only one of the many factors to consider and is not controlling. Witness testimony must be weighed against objective evidence and medical diagnosis." *Id.* at 21; *see Brown v. Apfel*, 192 F.3d 492, 500 (1999). The ALJ went on to weigh plaintiff's evidence:

> The evidence of record reveals the claimant apparently fell from a ladder in July 1987 and in September 1987 he was injured when he lost control of a chain saw. These activities are inconsistent with someone alleging total disability, on or before March 31, 1990. Mr. Ybarra testified that he applied for work to become a state trooper but was not hired because of his syncope episodes. However, a letter from the Office of State Police dated September 25, l985 indicated that Mr. Ybarra was one of 100 individuals still

under serious consideration out of over 4,000 applications originally filed. However, due to recent state budget cuts, no new troopers would be hired. Again, the claimant apparently felt that he was capable of pursuing such a clearly physically demanding position as recently as 2000, well after his date last insured of March 31, 1990.

The claimant testified that his wife was the owner of a number of bars/lounges in Leesville, LA and he was not involved in running the businesses in anyway. On November 19, 1998 Dr. Brunetti evaluated the claimant. Mr. Ybarra indicated that he did not smoke but probably had a lot of passive smoke exposure in his business. The claimant reported to Dr. Brunetti that he owned a few bars and liquor stores in Leesville, but that they did not like to publicize this fact. Additionally, the claimant[']s previously reported self-employment income for l992 through 1994 was apparently amended after discussion with a local Social Security Office regarding the effect of these "earnings" on the potential success of the claimant's application for benefits. While the [ALJ] notes although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant may not be entirely reliable.

In addition, the claimant reported to Dr. Brunetti that he had never had a heart attack or coronary artery disease. . . . The claimant reported that he had not [had] any health-care maintenance for some time and did not check his blood sugar at home. These statements by the claimant are inconsistent with "total disability," on or before March 31, 1990. Examination in November 1998, revealed the need for no medication except for insulin, no claudication,[4] no visual complaints, no eye disease, no ulcers, and vibratory sensation preserved bilaterally. Such results are clearly inconsistent with total disability due to diabetes and related impairments.

Again, Mr. Ybarra testified that he applied for work with the CIA and Secret Service. The claimant testified that as recently as the year 2000 he felt he was able to join the state police despite his alleged impairments. He retired from the military in 1984 with a regular rather than disability pension. These actions by the claimant indicate that he was not as disabled as he alleged, on or before March 31, 1990.

---

[4] Claudication is "limping or lameness." DORLAND ILLUSTRATED MEDICAL DICTIONARY (27TH ED. 1988).

> To the extent the claimant contends he was unable to perform any work on a regular and continuing basis on and before March 31-1990, the evidence does not support such allegations. Accordingly, the undersigned finds that, on or before March 31. 1990, the claimant retained the residual functional capacity to perform light work with a sit/stand option. The claimant also could not have worked in [an] area requiring exposure to loud noise. Given the relatively sparse evidence from the period at issue, such limitations take into account the claimant's reasonable determinable impairments, on or before March 31, 1990.

Transcript at 21-22.

In light of the fact that the ALJ considered the myriad evidence of record before discounting plaintiff's testimonial evidence, this court finds that the ALJ's decision was supported by substantial evidence. This holding comports with the appeal court's *Brown* decision. In that case the court found that the ALJ did not abuse his discretion when he discredited the plaintiff's testimony of constant pain. *Brown*, 192 F.3d at 500. The ALJ weighed the testimony against evidence that the plaintiff engaged in daily activities like shopping, attending church, and playing bingo. *Id.* Additionally, she did not appear to be in any discomfort at the hearing. *Id.* Finally, every objective medical assessment revealed no physiological basis for her pain. *Id.* It is well established that the ALJ has discretion in this regard. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Anthony v. Sullivan*, 954 F.2d 289, 295-96 (5th Cir. 1992); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).

Further, plaintiff fails to convince this court that the ALJ did not consider all of the medical evidence in the record that it should have. Plaintiff notes that he put forth evidence that he suffered from diabetes mellitus, high blood pressure, and syncope while on active duty, but that the ALJ did not find these conditions disabling according to Appendix 1. Doc. 8, at 8. Thus, plaintiff essentially rehashes the arguments analyzed in the first section of this report and recommendation. As noted, this court finds that the ALJ properly considered these conditions

and properly found that plaintiff failed to meet his burden of showing that these conditions were disabling *per se*.

Plaintiff asserts that the ALJ failed to consider any Department of Veterans Affairs (VA) rating of disability. *Id.* This court finds, however, that plaintiff did not present evidence establishing that the VA rated him disabled prior to March 31, 1990. As the ALJ noted, "No treating physician expressed an opinion regarding claimant's ability to perform work-related activities and the record does not reflect a recommendation by a treating source that he limit his work activity, on or before March 31, 1990." Transcript at 19. Indeed, the part of the transcript cited by plaintiff shows that the VA did not find plaintiff disabled until February 6, 2001, with disability at a 100% rating for only about three months from August 1999 to November 1999. Transcript at 302-08. Additionally, although a VA disability determination may be given a weighty consideration by an ALJ (in the same manner as a physician's opinion), a VA determination is not binding on the Social Security Administration. *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1984). Accordingly, this court does not find that the ALJ committed any error with regard to the VA's determination of plaintiff's disability.

## III.

Plaintiff's final allegation is that the decision of the ALJ was contrary to evidence presented at the hearing, including witness testimony and that of the vocational expert. Doc. 8, at 8-9. Plaintiff asserts that all of the job examples that the vocational expert provided at the hearing and that appear in the ALJ's decision are inconsistent with his alleged impairment of diabetes mellitus with neuropathy. *Id.* Plaintiff asserts that the vocational expert testified that plaintiff could not perform any jobs with his alleged disabilities. *Id.* Because this court has

addressed plaintiff's arguments that the ALJ improperly discounted his witness testimony, the analysis in this section will be limited to consideration of plaintiff's argument that the ALJ made a decision contrary to the recommendation of the vocational expert.

As noted above, the ALJ considers plaintiff's allegations using a five-step sequential process. According to this process, the plaintiff has the burden through step four. Through step three, the ALJ determined first, that the evidence (although perhaps suspect due to amendments in the tax return after a visit to the Social Security Office) failed to reflect that claimant engaged in substantial gainful activity during the requisite period; second, that the evidence supported a finding that plaintiff's impairments in combination had more than a minimal adverse effect on plaintiff's ability to perform basic work activities during the requisite period; and third, that the evidence did not support a finding that these impairments were disabling *per se*. Transcript at 16-22.

After weighing the evidence presented by plaintiff through step three, the ALJ determined that plaintiff retained the RFC to perform light work with a sit/stand option and limited exposure to loud noise. *Id.* at 22. At step four, the ALJ properly enlisted a vocational expert to aid him in determining whether plaintiff could perform his past relevant work. *Id.*; *see Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Plaintiff apparently does not object to the vocational expert's finding that plaintiff's past relevant work[5] as a military officer was heavy, very skilled work. Transcript at 22. Nor does plaintiff object to the vocational expert's finding, and the ALJ's ratification, that "given [plaintiff's] age, education, past work experience and his particular residual functional capacity, on or before March 31, 1990, . . . [plaintiff] was incapable of performing his past relevant work, on or before March 31, 1990." *Id.* at 22.

---

[5] This phrase is defined at 20 C.F.R. § 404.1565 and, with exception, means work performed within the past 15 years or 15 years prior to the date that disability was established

The ALJ noted that at step five of the sequential analysis the burden shifted to the Social Security Administration to show that "there are other jobs existing in significant numbers in the national economy that an individual, so limited could have performed, on or before March 31, 1990, consistent with claimant's residual functional capacity, age, education, and work experience." *Id.* at 22. The ALJ properly enlisted the aid of a vocational expert to determine if the Secretary could meet that burden. *Id.*; *see Morris v. Bowen*, 864 F.2d 333, 333-36 (5th Cir. 1988).

In his decision, the ALJ documented:

> The claimant's age, education, and vocationally relevant past work experience, if any, must be viewed in conjunction with the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations, which contain a series of rules that may direct a conclusion of either "disabled" or "not disabled" depending upon the claimants residual functional capacity and vocational profile.
>
> Born on January 8, 1945, the claimant was thirty-nine years old at the alleged onset date and forty-five years old when his date last insured expired. This is defined in the regulations as a younger individual (20 CFR § 404.1563). He has more than a high school (or high school equivalent) education, and transferability of skills is not an issue in this case.
>
> The Medical-Vocational Guidelines are used as a framework for the decision when the claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has any nonexertional limitations. Based upon the claimant's residual functional capacity, on or before March 31, 1990, he was capable of performing a significant range of light work as defined in 20 CFR § 404.1567.
>
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If

> someone can do light work, we determine that he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods.
>
> On or before March 31, 1990, if the claimant were capable of performing the full range of light work, a finding of "not disabled" would be directed by Rules 202.20, 202.21, and 202.22 of the Medical-Vocational Guidelines. The claimant's ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations. An impartial vocational expert may be used to help determine whether or not there are a significant number of jobs in the national economy that a claimant can perform given his residual functional capacity and other vocational factors.
>
> The [ALJ] asked the vocational expert whether jobs existed in the national economy for an individual of the claimants age, education, past relevant work experience and residual functional capacity as determined on or before March 31. 1990. [The vocational expert] testified that assuming the hypothetical individual's specific work restrictions; he would have been capable of making a vocational adjustment to other work. The vocational expert testified that given all of these factors an individual, so limited, could have worked as a cashier/clerk, a guard/watchman and a sales clerk. In the national economy there are 2,000,000 positions for a cashier/clerk, 650,000 positions for a guard/watchman and 5,000,000 positions for a sales clerk. In the State of Louisiana there are 36,000 positions for a cashier/clerk; 5,000 positions for a guard/watchman and 100,000 positions for a sales clerk.
>
> Adopting the testimony of the vocational expert, the undersigned concludes that considering the claimant's age, educational background, work experience, and residual functional capacity, he was capable of making a successful adjustment to work that exists in significant numbers in the national economy on and before March 31, 1990. A finding of "not disabled" is therefore reached within the Framework of Medical-Vocational Rules 202.20, 202.21 and 202.22.

Transcript at 22-23.

Plaintiff contends that the ALJ asked the vocational expert only one question: whether an individual with the disabilities and severity plaintiff alleged would have been able to perform any job in the local or national economy. Doc. 8, at 8. Plaintiff asserts that the negative response to

this question given by the vocational expert provides evidence that plaintiff, in fact, could not perform any jobs and so was entitled to disability on or before March 31, 1990. *Id.* at 9. A review of the hearing transcript before the ALJ demonstrates, however, that the ALJ, in fact asked the vocational expert two questions. Transcript at 355-56. While he did, indeed, ask the vocational expert the question cited by plaintiff, he also asked the vocational expert whether plaintiff, given his age, education, and work experience, and given his assigned RFC would be capable of performing any jobs in the local or national economy. *Id.* The vocational expert's response in the transcript is consistent with the ALJ's decision. *Id.* The ALJ properly chose, based on this evidence which hypothetical question to credit. *Morris*, 864 F.2d at 336. It is the ALJ's job to weigh evidence and to choose what evidence to credit. *Perez*, 415 F.3d at 461. This court has reviewed the decisions of the ALJ and found that substantial evidence supported the ALJ's decisions.

## IV.

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's determination be AFFIRMED and that plaintiff's Complaint be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN**

ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 9th day of September, 2008.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE